UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID POLLOCK,

    Plaintiff,

v.

VIEWPOINT CORPORATION,

    Defendant.
_____/

Case No. 05-71649
Hon. Gerald E. Rosen

**OPINION AND ORDER REGARDING DEFENDANT'S
MOTION REQUESTING APPLICATION OF NEW YORK LAW**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on     **JAN 1 8 2006**

PRESENT: Honorable Gerald E. Rosen
                 United States District Judge

## I. INTRODUCTION

Plaintiff David Pollock commenced this action in a Michigan circuit court on March 4, 2005, alleging that his former employer, Defendant Viewpoint Corporation, owes him sales commissions under the terms of an employment agreement entered into by the parties. Defendant removed the case to this Court on April 27, 2005, citing diversity of citizenship as between Plaintiff, a Michigan resident, and Defendant, a Delaware corporation with its principal place of business in New York. *See* 28 U.S.C. § 1332(a).

By motion filed on August 11, 2005, Defendant now asserts that Plaintiff's claim for unpaid sales commissions should be governed by the laws of the State of New York.

In support of this contention, Defendant cites a provision of an "Employee Invention, Copyright, and Secrecy Agreement" executed by Plaintiff at the time of his hiring, which expressly called for application of New York law. In Defendant's view, this provision defeats Plaintiff's effort to recover under the Michigan Sales Representative Act ("MSRA"), Mich. Comp. Laws § 600.2961, a statute which permits an additional recovery of two times the amount of the overdue commissions in the event of an intentional failure to pay.

Having reviewed the parties' submissions in support of and opposition to Defendant's motion, the Court finds that the relevant facts and legal arguments have been sufficiently presented in these written materials, and that it is appropriate to decide this motion "on the briefs." See Local Rule 7.1(e)(2), U.S. District Court, Eastern District of Michigan. This Opinion and Order sets forth the Court's rulings on Defendant's motion.

## II. FACTUAL BACKGROUND

Defendant's motion rests solely upon the allegations of the complaint, as well as the written offer of employment extended to Plaintiff and the terms of the parties' written Employee Invention, Copyright, and Secrecy Agreement. Accordingly, the following recitation of facts draws exclusively from these sources, with Plaintiff's allegations accepted as true for present purposes.

On August 1, 2002, Plaintiff David Pollock, a Michigan resident, accepted a written offer of employment made to him on July 31, 2002, by Defendant Viewpoint

Corporation, a Delaware corporation headquartered in New York. Through its July 31, 2002 letter, Defendant offered Plaintiff the position of account director for the state of Michigan, and stated that Plaintiff would be "eligible to participate in [Defendant's] standard commission program." (Complaint, Ex. 1.) Plaintiff indicated his acceptance of this offer by signing and returning Defendant's letter, and by executing an accompanying Employee Invention, Copyright, and Secrecy Agreement (the "Agreement").

The latter Agreement included a number of restrictive covenants in favor of Defendant relating to the company's proprietary information and intellectual property. It further provided that "[t]his Agreement shall be construed to be in accordance with, and governed by, the laws of the State of New York," and that Plaintiff "consent[ed] to the personal jurisdiction of the state and federal courts located in New York for any lawsuit filed there against me by [Defendant] arising from or related to this Agreement." (Defendant's Motion, Ex. B, Agreement at 4.) The Agreement did not, however, contain any terms or conditions relating to Defendant's standard commission program. Rather, the sole mention of this program was found in Defendant's offer letter, a document which was wholly silent as to the law that would govern its terms.

During the term of his employment as account director, Plaintiff procured sales for the benefit of Defendant, primarily focusing on the automotive industry in southeastern Michigan. After Plaintiff resigned from his position on October 31, 2003, he allegedly was paid only $94,000 of the $140,000 in commissions still owed to him, leaving a

3

balance of $56,000. When Defendant failed to remit this outstanding amount despite a written demand for payment, Plaintiff commenced the present action in Michigan state court, seeking to recover the allegedly unpaid commissions as well as the additional damages and fees awardable under the MSRA.

### III. ANALYSIS

#### A. The Standards Governing Defendant's Motion

Although Defendant does not identify the rule or rules under which its motion is brought, the Court finds that this motion is most appropriately analyzed under Fed. R. Civ. P. 12(b)(6), as it challenges the viability of Plaintiff's claim for recovery under Michigan law. When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the Court must accept as true the well-pleaded factual allegations set forth in the complaint. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976). However, the Court "need not accept as true legal conclusions or unwarranted factual inferences." Morgan, 829 F.2d at 12. The Court will apply these standards in resolving Defendant's motion.

#### B. Plaintiff Is Entitled to Proceed on His Claim for Recovery under the Michigan Sales Representative Act.

As noted above, the Employee Invention, Copyright, and Secrecy Agreement (the "Agreement") executed by the parties in connection with Defendant's offer of employment to Plaintiff included a choice-of-law provision stating that the Agreement

4

"shall be construed to be in accordance with, and governed by, the laws of the State of New York." (Defendant's Motion, Ex. B, Agreement at ¶ 4.) In his complaint, however, Plaintiff seeks an award of damages under the Michigan Sales Representative Act ("MSRA"), Mich. Comp. Laws § 600.2961. Through its present motion, Defendant argues that the Agreement's choice of New York law precludes any recovery of damages under the MSRA. The Court disagrees.

Because this case lies within the Court's diversity jurisdiction, the choice-of-law rules of the forum state, Michigan, govern the determination of the law that applies to Plaintiff's claim for unpaid commissions. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S. Ct. 1020, 1021 (1941); *Wallace Hardware Co. v. Abrams*, 223 F.3d 382, 391 (6th Cir. 2000). The Michigan courts have adopted the approach set forth in the Restatement (Second) of Conflict of Laws. *See Johnson v. Ventra Group, Inc.*, 191 F.3d 732, 738-39 (6th Cir. 1999); *Chrysler Corp. v. Skyline Indus. Servs., Inc.*, 448 Mich. 113, 124-26, 528 N.W.2d 698, 703-04 (1995).

Under the Restatement approach, the parties' own choice of law — most commonly, through a contractual choice-of-law provision — generally will be enforced, unless "[t]he chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice," or unless the "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular

issue." *Johnson,* 191 F.3d at 739 (quoting Restatement (Second) of Conflict of Laws § 187(2)). Alternatively, if the parties have not designated the law that governs their contractual rights and duties, a court should apply "the local law of the state which, with respect to [a particular contractual] issue, has the most significant relationship to the transaction and the parties," considering such factors as "the place of contracting," "the place of negotiation of the contract," "the place of performance," "the location of the subject matter of the contract," and "the domicil, residence, nationality, place of incorporation and place of business of the parties." *Chrysler Corp.,* 448 Mich. at 120 n.14, 528 N.W.2d at 701 n.14 (quoting Restatement (Second) of Conflict of Laws § 188).

In this case, Defendant contends that the parties have selected New York law to govern their contractual rights and obligations, by virtue of the choice-of-law provision contained in the Employee, Invention, Copyright, and Secrecy Agreement that the parties executed at the time of Plaintiff's hiring. This argument is defeated, however, by the plain language of the Agreement itself. The choice-of-law provision, by its express terms, states that "*[t]his Agreement* shall be construed to be in accordance with, and governed by, the laws of the State of New York." (Defendant's Motion, Ex. B, Agreement at 4 (emphasis added).) It follows, then, that the parties have selected New York law to govern any issues or disputes that may arise out of *this particular Agreement,* as opposed to other aspects of their broader contractual relationship.

The Agreement, in turn, encompasses only matters relating to intellectual property

6

and proprietary information, and cannot be viewed as reaching or governing issues beyond the scope of its subject matter. Most significantly, this Agreement does not even address the subject of commissions, much less purport to govern the parties' respective rights and obligations regarding the earning and payment of commissions. Rather, Defendant's commission program is referenced solely in the company's July 31, 2002 offer letter to Plaintiff, a document that is entirely silent as to a choice of law. The Court knows of no authority, and Defendant has not cited any, that would dictate that the parties' choice of law as to one specific aspect of their contractual relationship should control all other aspects of their relationship, despite the absence of any indication that the parties intended this result.

Notably, even if the Agreement's designation of New York law were construed as carrying over to the parties' commission arrangement, Plaintiff correctly points out that the decision in *Howting-Robinson Associates, Inc. v. Bryan Custom Plastics*, 65 F. Supp.2d 610 (E.D. Mich. 1999), if followed here, would militate against the enforcement of such a contractual choice-of-law provision. As observed earlier, the Restatement approach overrides the parties' own choice of law where the "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest" in the matter at issue. Restatement (Second) of Conflict of Laws § 187(2)(b). In *Howting-Robinson Associates,* Judge Taylor of this District held that the parties' contractual selection of Ohio law ran afoul of this Restatement provision, as the

7

application of Ohio law would violate a fundamental policy reflected in the Michigan Sales Representative Act:

> A fundamental policy may be embodied in a statute which (1) makes one or more kinds of contracts illegal or (2) which is designed to protect a person against the oppressive use of superior bargaining power. The text of the MSRA indicates that the Michigan Legislature, in enacting a heavy penalty against violating principals, intended to ensure that sales representatives in Michigan are paid the full commissions to which they are entitled, especially when those commissions fall due after the termination of the employment relationship. Ohio law contains no such protection or provision. In this case the parties have selected, through their choice of law provision, a jurisdiction in which there is a substantial erosion of the quality of protection that the [MSRA] would otherwise provide. Accordingly, the application of Ohio law, in this context, would be violative of a specific legislatively expressed public policy of the State of Michigan and therefore should not be enforced.

*Howting-Robinson Associates,* 65 F. Supp.2d at 613 (internal quotation marks and citations omitted). Much the same could be said in this case, where it does not appear that New York law affords any special statutory or common-law protection for sales representatives who seek to recover overdue commissions.

Yet, the Court need not go so far here in order to reject Defendant's appeal to New York law. Rather, it is enough to observe that in this case, in contrast to *Howting-Robinson Associates,* the parties have **not** specified that the law of a state other than Michigan should govern the payment of sales commissions. In the absence of a countervailing agreement by the parties themselves, the terms of the MSRA are expressly applicable to the circumstances presented here. Specifically, the Act's definition of a "principal" encompasses a company such as Defendant that "[c]ontracts with a sales

8

representative to solicit orders for or sell a product in this state," Mich. Comp. Laws § 600.2961(1)(d)(ii), regardless of whether the company maintains any offices in Michigan. Accordingly, as a "principal" under the Act, Defendant was obliged to pay any outstanding commissions to Plaintiff "within 45 days after the date of termination." Mich. Comp. Laws § 600.2961(4). Surely, if parties can agree to the application of another state's law and still be bound by the terms of the MSRA, as was the case in *Howting-Robinson Associates,* it is all the more apparent that the MSRA should apply in the absence of a contrary choice-of-law provision in the parties' contract.

This conclusion gains further support upon considering the various factors set forth in § 188 of the Restatement. As noted earlier, these factors govern the determination of the applicable law where, as here, the parties' agreement does not include a choice-of-law provision that encompasses the matter in dispute. The first two of these factors, the place of contracting and the place of negotiation of the contract, are inconclusive in this case, as it appears from the limited record that the parties' contractual relationship resulted from negotiations, discussions, and correspondence between Plaintiff in Michigan and Defendant at its New York headquarters. Similarly, the "place of residence or business" factor provides no little or no basis to choose between the application of Michigan and New York law. The "place of performance" factor, however, weighs decisively in favor of the application of Michigan law, as it appears that Plaintiff was hired for the primary, if not exclusive, purpose of soliciting orders for Defendant's products from Michigan

9

customers. Indeed, the commissions that allegedly are still owed to Plaintiff derive from sales to an automotive industry customer located in southeastern Michigan. On balance, then, the Restatement approach leads to the conclusion that Michigan law governs the present action.

When a company such as Defendant hires a Michigan resident to solicit orders for its products from Michigan customers, it should reasonably anticipate that the terms of the MSRA will govern its obligation to pay commissions to its Michigan-based sales representative. If the company wishes to opt out of this statutory obligation, it surely must, at a minimum, secure a contractual agreement with its employee to apply the law of another state.[1] Because Defendant did not do so here, the Court cannot accept its contention that New York law, and not the MSRA, governs the claim for sales commissions advanced by Plaintiff in this case.

## IV. CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant's August 11, 2005 Motion Requesting Application of New York Law is DENIED. In light of the resolution of this matter, IT IS FURTHER ORDERED that Plaintiff's November 21, 2005 motion to amend and extend scheduling order is GRANTED, with the parties

---

[1] In light of the ruling in *Howting-Robinson Associates*, and in light of the MSRA provision stating that "a provision in a contract between a principal and a sales representative purporting to waive any right under this section is void," Mich. Comp. Laws § 600.2961(8), the Court expresses no view as to the legal effect of such a choice-of-law provision.

granted approximately *ninety (90) additional days* within which to conduct any further discovery and to prepare and file any dispositive motions. Specifically, IT IS FURTHER ORDERED that the relevant dates and deadlines set forth in the Court's May 24, 2005 scheduling order are AMENDED as follows:

| | |
|---|---|
| Preliminary Witness Lists: | 3/17/2006 |
| Discovery Cut-Off: | 3/31/2006 |
| Non-Expert Final Witness Lists: | 4/14/2006 |
| Dispositive Motions: | 4/28/2006 |
| Proposed Joint Final Pretrial Order: | 8/18/2006 |
| Final Pretrial Settlement Conference: | Thursday, 8/24/2006 at 11:00 a.m. |
| Trial: | September 2006 |

In all other respects, the May 24, 2005 scheduling order remains in full force and effect.

Gerald E. Rosen
United States District Judge